# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

ROSE BOND,

        Petitioner,

        vs.

CAROLYN W. COLVIN, Commissioner of Social Security,

        Respondent.

Case No. CV 14-00168-N-REB

**MEMORANDUM DECISION AND ORDER**

---

The Court has before it for decision Petitioner Rose Bond's Petition for Review (Dkt. 1), filed May 1, 2014, seeking review of the Social Security Administration's final decision to deny her disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On March 10, 2011, Rose Bond ("Petitioner") applied for Social Security Disability Insurance, alleging a disability onset date of September 28, 2010, when she was 55 years old. (AR 180.) Petitioner's claim was initially denied and, again, denied on reconsideration. (AR 109-119.) Petitioner timely filed a Request for Hearing before an Administrative Law Judge, which began on February 13, 2013 in Spokane, Washington before Administrative Law Judge R.J. Payne (the "ALJ"). Petitioner was represented by attorney Mark Jones. (AR 28-65.) An impartial medical expert, Dr. Vu, testified by telephone. (AR 66-83.) The hearing was then continued to April 23, 2013, for the Petitioner's testimony and testimony from a vocational

**MEMORANDUM DECISION AND ORDER - 1**

expert. Petitioner appeared and testified, along with K. Diane Kramer, an impartial vocational expert.  At the time of the hearing, Petitioner had past relevant work as an employment specialist/counselor.  (AR 21.)

The ALJ issued his decision on June 7, 2013.  He denied Petitioner's claims, ruling that Petitioner was not disabled within the meaning of the Social Security Act.  (AR 9-23.)  Petitioner timely requested review from the Appeals Council.  (AR 7-8.)  The Appeals Council denied review on March 6, 2014 (AR 1-6), which served to make the ALJ's decision the Commissioner's final decision.

Petitioner now seeks judicial review of the Commissioner's decision to deny benefits. Petitioner contends the ALJ erred in that he (1) did not use the best available evidence regarding Petitioner's neurologic disorder; (2) improperly ignored Dr. Puffer's opinion in forming the residual functional capacity (RFC) assessment; and (3) failed to find Petitioner's ocular migraines severe when formulating the RFC.

## II. STANDARD OF REVIEW

The Commissioner's decision will be upheld if supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might

**MEMORANDUM DECISION AND ORDER - 2**

accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

*Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less

than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975);

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or

considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

 With respect to questions of fact, the role of the Court is to review the record as a whole

to determine whether it contains evidence that would allow a reasonable mind to accept the

conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony,

*Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel.*

*Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically

flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the

evidence is susceptible to more than one rational interpretation in a disability proceeding, the

reviewing court may not substitute its judgment or interpretation of the record for that of the

ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

 With respect to questions of law, the ALJ's decision must be based on proper legal

standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.

*See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that

is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying

the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

## III. DISCUSSION

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner had not engaged in SGA since September 28, 2010, the alleged onset date. (AR 14.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

**MEMORANDUM DECISION AND ORDER - 4**

An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: fibromyalgia; emphysema; neurologic disorder; and frozen shoulder syndrome. (AR 14.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 15.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that

**MEMORANDUM DECISION AND ORDER - 5**

disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following non-exertional limitations: could frequently kneel, crouch, and crawl; could occasionally climb ramps or stairs, but could never climb ladders, ropes, or scaffolds; she could never lift overhead with left, non-dominant arm; should avoid moderate exposure to fumes, odors, dusts, gases, and other pulmonary irritants; and should avoid concentrated exposure to hazardous machinery.  (AR 16.)

        In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled.  The ALJ found, at step five, that Petitioner is capable of performing past relevant work as an employment specialist/counselor.  (AR 21.)

**B.      Analysis**

        **1.      ALJ's Finding of a Severe Neurologic Disorder**

        Petitioner contends that the ALJ erred in relying on a July 2011 medical opinion of reviewing physician Dr. Crites, as to which Dr. Crites did not have the benefit (pro or con) of a

**MEMORANDUM DECISION AND ORDER - 6**

second MRI exam of the Petitioner, which was conducted in May 2013, nor the report of a comprehensive eye exam conducted by Dr. Harrell in April 2013, for use in forming his opinion.

In his decision, the ALJ concluded that Petitioner has a neurologic disorder, as stated by Dr. Puffer in September 2010.  (AR 15.)  The ALJ found this condition to be severe.  (AR 14.) Dr. Crites' opinion from July 2011, prior to the first MRI, concluded that the evidence does not document that Petitioner has multiple sclerosis.  Dr. Puffer reviewed Petitioner's first MRI from August 2011 and he concluded that he could not diagnose multiple sclerosis.  (AR 259-261.) Dr. Stevens examined Petitioner and reviewed her medical records, including the August 2011 MRI, in March 2013 and found that there was "no objectively demonstrated condition that would prevent her from functioning in normal manner."  (AR 604.)  Medical expert Dr. Vu, who reviewed all of Petitioner's medical files at the time, testified at the first hearing in February 2013 and stated the record does not establish petitioner has multiple sclerosis.  The ALJ relied on several medical opinions to conclude that Petitioner has a severe neurologic disorder, not just Dr. Crites.  (AR 15.)

Petitioner argues that because the ALJ relied on the opinion of Dr. Crites,[1] who did have the benefit of the second MRI or comprehensive eye exam, both conducted in 2013, this case should be remanded.  It is Petitioner's burden to establish that she is disabled.  *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  Petitioner contends that she believes the second MRI, which noted "small areas consistent with demyelination," "would have been important to Dr. Crites."  (*See* AR 617.)   Whether or not the second MRI would have been important to Dr.

---

[1]  The Court disagrees with Petitioner's characterization of the ALJ's decision in this regard.  The ALJ relied on several medical sources, including Dr. Crites.

**MEMORANDUM DECISION AND ORDER - 7**

Crites is not the inquiry before the Court.  The inquiry is whether the ALJ's decision is supported

by substantial evidence. *E.g.,* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d

1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). There is

substantial evidence to support the ALJ's finding that Petitioner has a severe neurologic

disorder.  First, no medical provider has diagnosed multiple sclerosis  Although Petitioner has

symptoms and there is medical evidence that is consistent with a diagnosis of multiple sclerosis

that is noted in the record, there has not been a diagnosis of multiple sclerosis. Second, although

the ALJ did cite to Dr. Crites' conclusion that the medical evidence did not establish multiple

sclerosis as a medically determinable impairment, it was Dr. Puffer's opinion he adopted

regarding the severe neurologic disorder.  (*See* AR 15.)  Significantly, in that Petitioner

emphasizes the ALJ's assessment of Dr. Crites' opinion, the ALJ did not rely solely on Dr.

Crites' opinion.  It is correct that Dr. Crites did not review the first MRI; however, Dr. Puffer did

review the first MRI and did not diagnose multiple sclerosis.   Significantly for these purposes,

the second MRI report states  that the scattered white matter foci are "*unchanged from [the first*

*MRI.]*" (AR 617.)  (Emphasis supplied.)

Petitioner focuses on this phrase in the second MRI report: "These small abnormal white

matter foci are consistent with small areas of demyelination, again of multiple etiologies."  (AR

617.)  This statement simply says these findings are *consistent* with demyelination and does not

state what the source of these areas are.  The fact that the first MRI report did not contain the

term "demyelination" does not alter the fact that the second MRI's findings are "unchanged"  in

number and distribution from the first MRI.  (*Id*.)  It is unclear how the ALJ's discussion of the

various physician's assessments of one or more of the MRI reports could possibly constitute

**MEMORANDUM DECISION AND ORDER - 8**

error given these details, but even if the reference to the demyelination is of some significance in that it is language found in second MRI report and not identical to the first MRI report, the variation seems inconsequential in light of the fact that the second MRI's findings are "unchanged" in number and distribution from the first MRI. (*Id.*) Hence, any error that might arguably exist in this particular setting is harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1040, 1054-55 (9th Cir. 2006) (noting that the ALJ commits harmless error when the mistake was "nonprejudicial" or "irrelevant" to the ultimate disability conclusion).

The same can be said about the eye exam report of Dr. Harrell, the optometrist who diagnosed ocular migraines. (*See* AR 15.) Dr. Harrell found that Petitioner had a general decrease in vision, but there was no "pattern consistent with any particular or common disease process" and that her eyes appeared "healthy outside of this decrease in acuity." (AR 612.) He also stated that she appeared to have an "inflammatory condition . . . that could very possibly be MS." (*Id.*) The ALJ considered and discussed this evidence in his decision. Petitioner has not shown that because Dr. Crites did not have the benefit of this examination in forming his opinion, there has been prejudicial error. It is often common in the social security disability process that the evaluating physicians at the earlier stages, like Dr. Crites, will not have the benefit of later medical evidence. This does not make their opinions inherently unreliable.

In sum, the ALJ did not solely rely on Dr. Crites' and Dr. Vestral's opinions from 2011 in forming his conclusion. He stated he gave significant weight to Dr. Puffer's diagnoses, but little to Puffer's opinion of Petitioner's limitations.[2] (AR 18.) He gave great weight to the opinion of Dr. Vu who reviewed all of Petitioner's medical evidence. (AR 19.) He also

---

[2] This will be discussed in further detail in the next section.

**MEMORANDUM DECISION AND ORDER - 9**

reviewed the report of Dr. Stevens who evaluated Petitioner in March 2013 and gave his opinion "some weight."  (AR 20.)  Dr. Stevens found that Petitioner suffered from "no limitations" and that nothing would "prevent her from functioning in a normal manner."  (AR 20.)  Accordingly, Petitioner is mistaken in her contention that the ALJ only relied on these two medical evaluators, Dr. Crites and Dr. Vestral, who did not have the benefit of the entire record.

The Court finds the ALJ's finding of a severe neurologic disorder is supported by substantial evidence as required by the law.  Further, Petitioner has not met her burden of showing how any error, if there was indeed one, has been prejudicial or relevant to the ultimate determination of disability.

### 2.    Dr. Puffer's Opinion and Petitioner's RFC

Petitioner takes issue with the ALJ adopting Dr. Puffer's opinion regarding Petitioner's severe neurologic disorder but not adopting the limitations set forth by Dr. Puffer, which are far more limited that the RFC set forth by the ALJ.

With respect to Dr. Puffer's opinion, the ALJ specifically "assign[ed] significant weight to Dr. Puffer's diagnoses, but little weight to his opinion on the effects of the claimant's conditions.  No other medical source of record opined that the claimant would be limited to the extent assessed by Dr. Puffer and his opinion appears to be primarily based on the claimant's complaints during the evaluation."  (AR 18.)  The ALJ then discussed the activities of daily living that Petitioner reported in her Function Report, including preparing meals, performing personal care, cleaning, doing laundry, doing yard work, shopping for groceries, and fishing. (*Id*.)  After doing so, the ALJ concluded that the capabilities self-reported by the Petitioner were "inconsistent with her complaints to Dr. Puffer, and his resulting conclusions are assigned little

**MEMORANDUM DECISION AND ORDER - 10**

weight." (*Id*.)

In reviewing Petitioner's criticisms of the ALJ's conclusions in this regard, the Court considers the template contained Ninth Circuit case law as to the consideration to be given to the different types of physicians commonly involved in cases such as this: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating physician than a nontreating physician. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). An examining physician's opinion also is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

Even so, an ALJ is not required to accept a conclusory opinion of a treating physician, not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Neither is ALJ bound to adopt a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, if the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

**MEMORANDUM DECISION AND ORDER - 11**

Items in the record that may not discredit a physician's opinion in that regard include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id*.; *Bayliss v. Barnhart*, 427 F.3d at 1216; *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Here, it was not error for the ALJ to assign significant weight to Dr. Puffer's diagnoses but little weight to Puffer's opinions regarding the effects of Petitioner's conditions. However, in doing so, the ALJ must follow the rule that when the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In this record, the ALJ pointed to evidence that Dr. Puffer's opinion was contradicted by other physicians who did not assess as restrictive of limitations as Dr. Puffer. The ALJ noted that Dr. Puffer's opinion appeared to be based primarily on Petitioner's complaints during the evaluation. The ALJ noted that Petitioner engaged in a wide variety of activities and that these activities were inconsistent with her complaints to Dr. Puffer. (AR 18.) Accordingly, the ALJ provided legitimate and specific reasons for not agreeing with the totality of Dr. Puffer's opinion on Petitioner's limitations. Conflicting medical opinions and conflicting daily activities are specific and legitimate reasons for rejecting a contradicted treating physician's opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Next, Petitioner takes issue with how the ALJ "adopted" a portion of Dr. Puffer's opinion but failed to include it in formulating the RFC. Such an argument mischaracterizes the manner

**MEMORANDUM DECISION AND ORDER - 12**

in which the ALJ used Dr. Puffer's opinion in formulating the RFC.  As stated above, the ALJ said he adopted Dr. Puffer's opinions as to Petitioner's diagnoses but *not* the extent of the limitations assessed by Dr. Puffer.  It is within the purview of the ALJ to accept portions of a treating physician's opinion and reject others *if* specific and legitimate reasons are given for doing so.  *See Batson v. Comm'r Soc. Sec. Admin.* 359 F.3d 1190, 1197 (9th Cir. 2004) (finding the ALJ was not required to incorporate opinion evidence which was permissibly discounted); *Magallanes*, 881 F.2d at 753.  The ALJ met that standard in providing his reasons for not giving significant weight to the limitations assessed by Dr. Puffer.

An applicant's residual functional capacity is an assessment of that individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. In other words, what can an individual can still do despite her limitations? *See* SSR 96–8P. In assessing an applicant's residual functional capacity, the ALJ must consider all of the relevant evidence in the case record, including information about the individual's symptoms and any "medical source statements" submitted by an individual's treating source or other acceptable medical sources. *See id.* An ALJ's residual functional capacity determination is upheld if it is supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ considered opinions from all the physicians, treating, examining, and reviewing, in making the RFC determination.  (AR 18-20.)  The ALJ has considered all the evidence in making his residual functional capacity finding and it is supported by substantial evidence.

### 3.    Petitioner's Ocular Migraines and Severity

The ALJ discussed Petitioner's diagnosis from an optometrist in April 2013 that she

**MEMORANDUM DECISION AND ORDER - 13**

suffers from ocular migraines.  (AR 15.)  However, the ALJ found the ocular migraines were "non-severe" for purposes of his decision because neither the optometrist's "report nor the remaining evidence indicates that the ocular migraines limit the claimant's ability to perform any work-related activities."  (AR 15.)  A medically determinable impairment is not "severe" unless it "significantly limit[s]" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include physical functions such as walking, standing, sitting, and lifting; capacities for seeing, hearing and speaking; understanding, remembering, and carrying out simple instructions; using judgment; responding appropriately in a work situation; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

Substantial evidence supports the ALJ's conclusion that Petitioner's ocular migraines were not severe.  Although Petitioner has complained of headaches over the years, the only objective medical evidence of such was the report of Dr. Harrell in April 2013.  Dr. Harrell did not assess any functional limitations from the ocular migraines, nor has Petitioner argued that she has any such limitations or that they should have been included in the RFC.  Instead, Petitioner argues in conclusory fashion that her "ocular migraines would be a severely limiting vocational barrier to maintaining employment" but does not state how, why, or cite to any place in the record for such a position.  *See Shinseki v. Sanders*, 556 U.S. 396 (2009) (holding that the burden of showing an error is harmful falls on the party attacking an administrative agency's determination) (citing *Nelson v. Apfel*, 131 F.3d 1228, 1236 (7th Cir. 1997) (applying rule in social security case)). There is no indication in the record that Petitioner suffers any significant limitations in her ability to do basic work activities because of her ocular migraines.  *See* 20 C.F.R. § 416.921(a).  On this record, substantial evidence support's the ALJ's findings.

**MEMORANDUM DECISION AND ORDER - 14**

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

The evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation.  Accordingly, the ALJ's decision as to Petitioner's alleged disability is based on proper legal standards and supported by substantial evidence.  Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

## V.  ORDER

Based on the foregoing, Petitioner's Petitioner for Review (Dkt. 1) is DENIED, the decision of the Commissioner is AFFIRMED, and this action is DISMISSED in its entirety, with prejudice.

DATED:  **September 24, 2015**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 15**